SOUTHERN RAILWAY COMPANY *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ALABAMA.

No. 28.   Argued March 9, 10, 1911—Decided October 30, 1911.

The Safety Appliance Act of March 2, 1893, 27 Stat. 531, c. 196, as amended March 2, 1903, 32 Stat. 943, c. 976, embraces all locomotives, cars and similar vehicles used on any railway that is a highway of interstate commerce, and is not confined exclusively to vehicles engaged in such commerce.

The power of Congress under the commerce clause of the Constitution is plenary and competent to protect persons and property moving in interstate commerce from all danger, no matter what the source may be; to that end, Congress may require all vehicles moving on highways of interstate commerce to be so equipped as to avoid danger to persons and property moving in interstate commerce.

As between opposing views in regard to the construction of a statute the court in this case accepts the one in accord with the manifest purpose of Congress.

It is of common knowledge that interstate and intrastate commerce are commingled in transportation over highways of interstate commerce, that trains and cars on the same railroad, whether engaged

in one form of traffic or the other, are interdependent and that absence of safety appliance from any part of a train is a menace not only to that train but to others.
164 Fed. Rep. 347, affirmed.

THE facts, which involve the construction and constitutionality of certain sections of the Safety Appliance Acts, are stated in the opinion.

*Mr. Alfred P. Thom,* for plaintiff in error, submitted on the record.

*Mr. Assistant Attorney General Fowler,* with whom *Mr. Henry E. Colton,* Special Assistant to the Attorney General, was on the brief, for the United States.

There is a real and substantial relationship between interstate commerce and the equipping with safety appliances of all cars operated on a line of road engaged in carrying such commerce. *Adair* v. *United States,* 208 U. S. 161, 178.

The fact that the act of March 2, 1893, purports to have been enacted for the purpose of protecting travelers and employés, cannot affect the constitutionality of either that or of any subsequent safety appliance act. *Johnson* v. *Southern Pacific R. R. Co.,* 196 U. S. 1.

The decisions of this court upon analogous questions clearly show that the required relationship exists between interstate commerce, and the things required by the act of March 2, 1903, to be done by those operating railroads engaged in interstate commerce.

Congress has power even to construct roads to be used in interstate commerce, and to grant charters authorizing the construction of highways for that purpose, *e. g.,* the Cumberland National Road; and see *California* v. *Pacific Railroad Co.,* 127 U. S. 1; *Luxton* v. *North River Bridge Co.,* 153 U. S. 525, 529.

This court has never hesitated to declare the power of the United States to remove obstructions of every char-

acter from every avenue of commerce that may directly or indirectly interfere with interstate traffic. *Willson v. Blackbird Creek Marsh Co.*, 2 Pet. 214; *Gilman v. Philadelphia*, 3 Wall. 713; *Pennsylvania v. Wheeling Bridge Co.*, 13 How. 518; *In re Debs*, 158 U. S. 565.

Congress has power to provide, by the method adopted, against conditions which thus interfere with and impede the flow of interstate commerce.

The United States may even prevent interference with a stream not navigable, but which is tributary to a navigable stream, in order to preserve the navigability of the stream to which it is tributary. *United States v. Rio Grande Irrigation Co.*, 174 U. S. 690, 699, 709.

In order to facilitate and hasten the transportation of interstate commerce, the several States are not permitted to enact any law or adopt any regulation which will materially interfere with or impede interstate transportation. *Ill. Cent. R. R. Co. v. Illinois*, 163 U. S. 142, 153; *Lake Shore Ry. Co. v. Ohio*, 173 U. S. 285; *Cleveland &c. Ry. Co. v. Illinois*, 177 U. S. 514; *Mississippi R. R. Comm. v. Ill. Cent. R. R.*, 203 U. S. 335.

Congress may enact laws regulating the qualifications of those actually engaged in the carrying of interstate commerce, although such persons may at times in the pursuit of their avocation, be solely engaged in handling intrastate commerce. *The Daniel Ball*, 10 Wall. 557; *Smith v. Alabama*, 124 U. S. 465, 479; *N. Y., N. H. & H. R. R. Co. v. New York*, 165 U. S. 628.

State statutes relating to commerce have been held to be valid where they do not adversely affect but aid interstate commerce or where they have no relationship thereto; but when such statutes have substantially affected interstate or foreign commerce adversely they have been universally held to be invalid. *County of Mobile v. Kimball*, 102 U. S. 691, 698; *State Freight Tax*, 15 Wall. 232; *Pullman Co. v. Adams*, 189 U. S. 420; *Ratterman v.*

*West Un. Tel. Co.*, 127 U. S. 411; *West. Un. Tel. Co.* v. *Kansas*, 216 U. S. 1.

For other cases bearing materially upon the power of Congress to pass laws remotely affecting interstate commerce, see *United States* v. *Coombs,* 12 Pet. 71, 77; *L. & N. R. R. Co.* v. *Eubank*, 184 U. S. 27; *Employers' Liability Cases*, 207 U. S. 463, 495, 529; *Gibbons* v. *Ogden*, 9 Wheat. 1, 194; *Int. Comm. Com.* v. *Ill. Cent. R. R. Co.*, 215 U. S. 452, 474.

This act has been sustained by the lower Federal courts. *Wabash R. Co.* v. *United States*, 168 Fed. Rep. 1; *United States* v. *Int. & Gt. Nor. R. R. Co.*, 174 Fed. Rep. 638.

If necessary to sustain the constitutionality of the act of March 2, 1903, it might with reason be construed to apply solely to trains, locomotive, tenders, cars, and other vehicles actually engaged in carrying interstate commerce, and to all other locomotives, tenders, cars, and similar vehicles used in connection therewith. *United States* v. *Coombs.* 12 Pet. 71, 76.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This was a civil action to recover penalties for the violation in specified instances of the Safety Appliance Acts of Congress. 27 Stat. 531, c. 196; 32 Stat. 943, c. 976. The Government prevailed in the District Court and the defendant sued out this direct writ of error.

Briefly stated, the case is this: The defendant, while operating a railroad which was "a part of a through highway" over which traffic was continually being moved from one State to another, hauled over a part of its railroad, during the month of February, 1907, five cars, the couplers upon which were defective and inoperative. Two of the cars were used at the time in moving interstate traffic and the other three in moving intrastate traffic; but it

does not appear that the use of the three was in connection with any car or cars used in interstate commerce. The defendant particularly objected to the assessment of any penalty for the hauling of the three cars, and insisted, first, that such a hauling in intrastate commerce, although upon a railroad over which traffic was continually being moved from one State to another, was not within the prohibition of the Safety Appliance Acts of Congress, and, second, that, if it was, those acts should be pronounced invalid as being in excess of the power of Congress under the commerce clause of the Constitution. But the objection was overruled, 164 Fed. Rep. 347, and error is assigned upon that ruling.

The original act of March 2, 1893, 27 Stat. 531, c. 196, imposed upon every common carrier "engaged in interstate commerce by railroad" the duty of equipping all trains, locomotives and cars, used on its line of railroad in moving interstate traffic, with designated appliances calculated to promote the safety of that traffic and of the employés engaged in its movement; and the second section of that act made it unlawful for "any such common carrier" to haul or permit to be hauled or used on its line of railroad any car, "used in moving interstate traffic," not equipped with automatic couplers capable of being coupled and uncoupled without the necessity of a man going between the ends of the cars. The act of March 2, 1903, 32 Stat. 943, c. 976, amended the earlier one and enlarged its scope by declaring, *inter alia*, that its provisions and requirements should "apply to all trains, locomotives, tenders, cars, and similar vehicles used *on any railroad engaged* in interstate commerce, and in the Territories and the District of Columbia, and to all other locomotives, tenders, cars, and similar vehicles used in connection therewith." Both acts contained some minor exceptions, but they have no bearing here.

The real controversy is over the true significance of

the words "on any railroad engaged" in the first clause of the amendatory provision. But for them the true test of the application of that clause to a locomotive, car or similar vehicle would be, as it was under the original act, the use of the vehicle in moving interstate traffic. On the other hand, when they are given their natural signification, as presumptively they should be, the scope of the clause is such that the true test of its application is the use of the vehicle on a railroad which is a highway of interstate commerce, and not its use in moving interstate traffic. And so certain is this that we think there would be no contention to the contrary were it not for the presence in the amendatory provision of the third clause "and to all other locomotives, tenders, cars, and similar vehicles used in connection therewith." In this there is a suggestion that what precedes does not cover the entire field, but at most it is only a suggestion and gives no warrant for disregarding the plain words "on any railroad engaged" in the first clause. True, if they were rejected, the two clauses, in the instance of a train composed of many cars, some moving interstate traffic and others moving intrastate traffic, would by their concurrent operation bring the entire train within the statute. But it is not necessary to reject them to accomplish this result, for the first clause, with those words in it, does even more, that is to say, it embraces every train on a railroad which is a highway of interstate commerce without regard to the class of traffic which the cars are moving. The two clauses are in no wise antagonistic, but, at most only redundant, and we perceive no reason for believing that Congress intended that less than full effect should be given to the more comprehensive one, but, on the contrary, good reason for believing otherwise. As between the two opposing views, one rejecting the words "on any railroad engaged" in the first clause and the other treating the third clause as redundant, the latter is to be preferred, first, because it is

in accord with the manifest purpose, shown throughout
the amendatory act, to enlarge the scope of the earlier
one and to make it more effective, and, second, because
the words which it would be necessary to reject to give
effect to the other view were not originally in the amenda-
tory act, but were inserted in it by way of amendment
while it was in process of adoption (Cong. Rec., 57th
Cong., 1st Sess., vol. 35, pt. 7, p. 7300; *Id.*, 2d sess., vol. 36,
pt. 3, p. 2268), thus making it certain that without them
the act would not express the will of Congress.

For these reasons it must be held that the original act
as enlarged by the amendatory one is intended to embrace
all locomotives, cars and similar vehicles used on any
railroad which is a highway of interstate commerce.

We come then to the question whether these acts are
within the power of Congress under the commerce clause
of the Constitution, considering that they are not con-
fined to vehicles used in moving interstate traffic, but
embrace vehicles used in moving intrastate traffic. The
answer to this question depends upon another, which is,
Is there a real or substantial relation or connection be-
tween what is required by these acts in respect of vehicles
used in moving intrastate traffic and the object which the
acts obviously are designed to attain, namely, the safety
of interstate commerce and of those who are employed in
its movement? Or, stating it in another way. Is there
such a close or direct relation or connection between the
two classes of traffic, when moving over the same railroad,
as to make it certain that the safety of the interstate traffic
and of those who are employed in its movement will be
promoted in a real or substantial sense by applying the
requirements of these acts to vehicles used in moving the
traffic which is intrastate as well as to those used in moving
that which is interstate? If the answer to this question,
as doubly stated, be in the affirmative, then the principal
question must be answered in the same way. And this is

so, not because Congress possesses any power to regulate intrastate commerce as such, but because its power to regulate interstate commerce is plenary and competently may be exerted to secure the safety of the persons and property transported therein and of those who are employed in such transportation, no matter what may be the source of the dangers which threaten it. That is to say, it is no objection to such an exertion of this power that the dangers intended to be avoided arise, in whole or in part, out of matters connected with intrastate commerce.

Speaking only of railroads which are highways of both interstate and intrastate commerce, these things are of common knowledge: Both classes of traffic are at times carried in the same car and when this is not the case the cars in which they are carried are frequently commingled in the same train and in the switching and other movements at terminals. Cars are seldom set apart for exclusive use in moving either class of traffic, but generally are used interchangeably in moving both; and the situation is much the same with trainmen, switchmen and like employés, for they usually, if not necessarily, have to do with both classes of traffic. Besides, the several trains on the same railroad are not independent in point of movement and safety, but are interdependent, for whatever brings delay or disaster to one, or results in disabling one of its operatives, is calculated to impede the progress and imperil the safety of other trains. And so the absence of appropriate safety appliances from any part of any train is a menace not only to that train but to others.

These practical considerations make it plain, as we think, that the questions before stated must be answered in the affirmative.

*Affirmed.*