PENNSYLVANIA R. CO. v. INTERSTATE COMMERCE COMMISSION (UNITED STATES et al., Interveners).

(Commerce Court. December 5, 1911.)

No. 31.

COMMERCE (§ 85*)—INTERSTATE COMMERCE COMMISSION—POWERS—ORDERS RELATING TO DISTRIBUTION OF COAL CARS.

Where the Interstate Commerce Commission has found as a fact after hearing and on sufficient evidence that a rule adopted by a railroad company doing both interstate and intrastate business governing the distribution of cars in times of shortage to coal mines which use such cars indiscriminately for shipments to points within or without the state as their business may require is discriminatory, and in violation of law, the commission has jurisdiction to make orders requiring a different basis of distribution even though such orders apply to all cars, whether used in interstate or intrastate shipments.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 138; Dec. Dig. § 85.*]

Petition of the Pennsylvania Railroad Company against the Interstate Commerce Commission, the United States and others interveners. On demurrers to petition. Demurrers sustained.

For opinions of the Interstate Commerce Commission, see 19 Interst. Com. R. 356, 392.

F. D. McKenney (Henry Wolf Bikle, John G. Johnson, and Francis I. Gowen, on the brief), for petitioner.

Blackburn Esterline, Sp. Asst. Atty. Gen. (James A. Fowler, Asst. Atty. Gen., on the brief), for the United States.

P. J. Farrell, for Interstate Commerce Commission.

A. M. Liveright, for Hillsdale Coal & Coke Co. and Clark Bros. Coal Mining Company.

William A. Glasgow, Jr., for W. F. Jacoby & Co.

Before KNAPP, Presiding Judge, and ARCHBALD, HUNT, CARLAND, and MACK, Associate Judges.

KNAPP, Presiding Judge. On January 1, 1906, the petitioner adopted and put in force the following rule or regulation for the allotment and distribution of cars to bituminous coal mines:

"Commencing January 1st, 1906, assigned cars, i. e., cars for Pennsylvania Railroad fuel supply, foreign railroad cars specially consigned for the fuel supply of railroads consigning such cars, and individual cars assigned by the owners to specified mines for loading, will be charged against the capacity of the mines at which they are placed. The difference between the rated capacity of a mine and the capacity of the assigned cars placed for loading will be the rated capacity on which all other cars will be prorated."

Some two years later, as the record indicates, certain mine operators, viz., the Hillsdale Coal & Coke Company, Clark Bros. Coal Mining Company, and W. F. Jacoby & Co., filed complaints against petitioner with the Interstate Commerce Commission, alleging that the regulation above quoted was discriminatory, and therefore unlawful; the proceedings being known on the commission's docket as Nos. 1,063,

1,111, and 1,139. To these complaints answers were made in due time, and the commission on March 7, 1910, after full hearing, entered two orders, one entitled in No. 1,063 and the other in Nos. 1,111 and 1,139. These orders are substantially alike, and the material parts of each read as follows:

"This case being at issue upon complaint and answer on file, and having been duly heard and submitted by the parties, and full investigation of the matters and things involved having been had, and the commission having, on the date hereof, made and filed a report containing its conclusions thereon, which said report is made a part hereof; and it appearing that it is and has been the defendant's rule, regulation, and practice, in distributing coal cars among the various coal operators on its lines for interstate shipments during percentage periods, to deduct the capacity in tons of foreign railway fuel cars, private cars, and system fuel cars, in the record herein referred to as 'assigned cars,' from the rated capacity in tons of the particular mine receiving such cars and to regard the remainder as the rated capacity of that mine in the distribution of all 'unassigned' cars:

"It is ordered, that the said rule, regulation, and practice of the defendant in that behalf unduly discriminates against the complainant and other coal operators similarly situated and is in violation of the third section of the act to regulate commerce.

"It is further ordered, that the defendant be, and it is hereby, notified and required on or before the 1st day of October, 1910, to cease and desist from said practice and to abstain from maintaining and enforcing its present rules and regulations in that regard, and to cease and desist from any practice and to abstain from maintaining any rule or regulation that does not require it to count all such assigned cars against the regular rated capacity of the particular mine or mines receiving such cars in the same manner and to the same extent and on the same basis as unassigned cars are counted against the rated capacity of the mines receiving them."

The dates fixed for these orders to become effective were afterwards postponed to December 1, 1910, at which time they went into effect and have since been complied with by petitioner. In the meantime, and on October 4, 1910, the bill herein was filed against the commission in the Circuit Court of the United States for the Eastern District of Pennsylvania to set aside and annul the orders in question for reasons that will be hereafter stated. Pleading to this bill, the commission demurred to the first nine paragraphs, and answered, by admissions and denials only, the allegations in the remaining paragraphs. About the same time the Hillsdale Coal & Coke Company and Clark Bros. Coal Mining Company, the complainants before the commission in Nos. 1,063 and 1,111, obtained leave from the Circuit Court to intervene, and thereupon filed their joint demurrer to the bill, specifying various grounds of objection thereto. The case was transferred to this court upon its organization, and here the United States intervened, on leave granted, and adopted as its own the demurrer and answer of the commission. When the case came on for final hearing on the pleadings then on file, the firm of W. F. Jacoby & Co., complainants before the commission in No. 1,139, were allowed to intervene, and they also adopted as their own the pleadings of the other interveners. The sole question to be decided is the power of the commission to make the orders which the suit seeks to set aside, and that question arises on the demurrers above mentioned.

The authority of the commission to regulate the distribution of cars,

particularly coal cars, in times of car shortage, has been the subject of considerable litigation; and such authority has been so fully upheld and defined in recent decisions of the Supreme Court that any extended discussion of this case would seem to be unsuitable.

It is admitted, or at least not denied, that the commission had jurisdiction of the parties to and the subject-matter of the proceedings which resulted in the orders sought to be enjoined, and no question is made as to the regularity of those proceedings. Indeed, the precise grounds upon which these orders are claimed to be illegal are not made altogether clear, though it is less difficult to discern the purpose of petitioner in prosecuting the suit. It seems to be conceded that it the orders apply only to cars furnished for interstate shipments—as the recital which precedes the mandatory provisions might be held to imply—they are undoubtedly valid. But the petitioner contends that they apply also, or may be construed and enforced by the commission as applying, to cars for intrastate as well as interstate shipments, and that so construed they are in excess of the commission's authority; and this appears to be the sole objection upon which petitioner relies.

Assuming, without deciding, that the orders in question should be or can be so interpreted, we are nevertheless of opinion that they are within the powers delegated to the commission. In the course of its business as a common carrier the petitioner transports large quantities of coal to both intrastate and interstate destinations, and its cars are used indiscriminately in this service. The coal operators whose complaints were investigated by the commission, and at whose instance the orders were made, ship their products to points within or points without the state of Pennsylvania, as market conditions or other trade interests may dictate. A large part of the business is interstate, but it is conducted in its entirety by shipper and carrier alike as a unit of operation with little or no regard to the boundaries of the state in which the traffic originates.

In view of these facts, which are wholly undisputed, we see no reason to doubt the authority of the commission to make these orders, even though they are intended to have the application and effect which petitioner appears to apprehend. This conclusion necessarily follows, as we conceive, from the principles so clearly stated and so instructively discussed by Mr. Justice (now Chief Justice) White in Interstate Com. Com'n v. Illinois Central R. Co., 215 U. S. 452, 30 Sup. Ct. 155, 54 L. Ed. 280. Indeed, we are unable to find any substantial basis for distinguishing that case from the one at bar. The subject-matter is the same in both, the facts are strikingly similar, and the orders of the commission of nearly identical import. In that case, as in this, the commission found as a fact, upon evidence which permitted different inferences to be drawn, that the regulations complained of operated with discriminating effect, and under such circumstances the conclusions of the commission, as to matters within its jurisdiction, are binding upon the courts.

This conclusion is fortified by the recent decision of the Supreme Court in Southern Railway Co. v. United States, 222 U. S. 20, 32 Sup. Ct. 2, 56 L. Ed. —— (decided October 30, 1911). That case, it is

true, arose under the safety appliance laws, but the controlling principle involved applies equally, in our judgment, to the question here presented.

It may be true, as petitioner contends, that the rules condemned by the commission are more equitable than those which conform to the orders in question, but that would in no wise justify annulling the orders, as was distinctly held in the Illinois Case, supra. It may also be true that the enforcement of regulations in conformity with these orders, if applied to cars for intrastate as well as interstate shipments, would result in some conflict with the duties of petitioner under the laws of Pennsylvania, though how this could happen is not very apparent, but, if this is or proves to be the case, it furnishes no ground for our interference, since federal authority to the full extent that it may be exerted supersedes and limits state authority.

Holding this opinion, we see no occasion for construing these orders. The sole question with us is the question of power; and, if the orders here involved, upon any reasonable construction of their provisions, are within the powers conferred upon the commission, the exercise of those powers, under the circumstances of this case, must be upheld.

The demurrers should be sustained and the petition dismissed, with costs, and it will be so ordered.

CARLAND, Judge (concurring). I concur in the result reached in this case for the reason that the order of the commission when properly construed only relates to the distribution of coal cars for interstate shipment, and that the finding of the commission upon the question of unlawful discrimination on the record presented to us is conclusive.

Upon the other matters discussed in the opinion of the court I express no opinion.