## UNITED STATES v. ATLANTIC COAST LINE R. CO.

(District Court, S. D. Florida. May 28, 1913.)

RAILROADS (§ 254*)—SAFETY APPLIANCE ACT—CONSTRUCTION—AIR BRAKES—
COUPLERS—SWITCHING OPERATION.

It is no defense to an alleged violation of the Safety Appliance Act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]), requiring carriers engaged in interstate commerce to have at least 85 per cent. of the cars in a train equipped with air brakes so that they may be operated by the engineer, and also requiring all cars used in interstate commerce to be equipped with operating, automatic couplers, that the cars and train in question were only being moved in switching operations.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 764–772; Dec. Dig. § 254.*]

Action by the United States against the Atlantic Coast Line Railroad Company to recover penalties for violation of the Safety Appliance Act. On demurrer to defendant's pleas. Sustained.

H. H. Eyles, Asst. U. S. Atty., of Miami, Fla.

Kay & Doggett, of Jacksonville, Fla., for defendant.

CALL, District Judge. The declaration contains three causes of action:

(1) For hauling a St. L. & S. F. 120729 car from Lakeland northward when coupling and uncoupling apparatus on B end of said car was out of repair and inoperative.

(2) For hauling a S. A. L. car 35741 in and about Tampa when the coupling and uncoupling apparatus on B end of said car was out of repair and inoperative.

(3) For operating on its line one train of eight of its own cars, in and about Tampa, when only two cars had their brakes operated by the engineer on the locomotive drawing said train, less than 85 per cent. of the cars of said train.

To this declaration defendant interposed:

(1) The plea of not guilty.

(2) The special plea to the second and third causes setting up that the cars were "merely being moved about in switching operation at the times and places in said counts alleged."

To the second plea a demurrer and motion to strike was interposed by the government.

On the argument the court was requested by counsel for the government and defendant to rule particularly on the demurrer before considering the motion to strike, and recognizing the importance of the ruling the court will accede to this joint request and consider the demurrer first.

The demurrer and plea raises the question, "Is the defendant exempt from the requirements of the safety appliance act while performing switching operations?"

Defendant relies upon Erie R. Co. v. U. S., 197 Fed. 287, 116 C. C. A. 649. This case seems to exempt railroads from the necessity of

complying with section 1 of the act of 1893 and the second section of the act of 1903 (Act March 2, 1903, c. 976, 32 Stat. 943 [U. S. Comp. St. Supp. 1911, p. 1315]) while performing switching operations. The opinion of Circuit Judge Buffington says:

"It is conceded by the government that this act does not apply to, or at least has never been enforced as to, switching operations. Manifestly such is the reasonable construction of the act."

The government in this case does not concede this fact, but, on the contrary, contends otherwise, and cites the case of Chicago, M. & St. P. Ry. Co. v. U. S., 165 Fed. 123, 91 C. C. A. 373, 20 L. R. A. (N. S.) 473, holding that:

"There had been no delivery of the car in question at the ultimate destination, and the switching of it from the time it was taken by defendant's employés * * * to the time of the discovery of the defect was in the course of such delivery and constituted a case in interstate commerce."

This last case had reference to defective coupler.

The section of the act which the defendant is charged with having violated in the third count of the declaration is as follows:

"It shall be unlawful for any common carrier engaged in interstate commerce by railroad to use on its line any locomotive or to run any train in such traffic after said date that has not a sufficient number of cars in it so equipped with power or train brakes that the engineer on the locomotive drawing such train can control its speed without requiring brakemen to use the common hand brake for that purpose."

Section 2 of the act of 1903 provides for the percentage of cars in such train which shall have their brakes used and operated by the engineer, and that the Interstate Commerce Commission may increase this minimum by proper order.

The object of the Congress in passing the safety appliance acts was undoubtedly to safeguard interstate commerce, the life of the passengers, and the life and limb of the employés engaged therein. In doing this it has seen fit to prescribe the use of certain appliances for handling trains. Under these acts it is unlawful "to use any train in such traffic" without the safety appliances named therein. Do these words or the context mean only while the train is moving from point to point in the journey, or do they mean any running of a train of cars so engaged?

It would seem that the movement of such a train for the purpose of placing cars in position for delivery or for the purpose of making up a train would still be a violation of the act unless the provisions were complied with. The absence of power brakes from a sufficient number of cars to handle the train from the engine would endanger the lives of the brakemen on such a train as much as would their absence in the train after it had been made up. And we must not lose sight of the fact that Congress intended to protect this very class in providing for the use of power brakes instead of the hand brake in all interstate traffic. I am constrained to think that a train of cars used in interstate traffic falls within the meaning of the act as amended, whether used in regular transit or switching operations, and that

therefore the demurrer to the second plea to the third count is well taken.

I now consider the demurrer to the second plea to the second count of the declaration.

The Supreme Court, in Southern Ry. Co. v. U. S., 222 U. S. 20, on page 26, 32 Sup. Ct. 2, on page 4 (56 L. Ed. 72), have this to say:

"For these reasons it must be held that the original act as enlarged by the amendatory one is intended to embrace all locomotives, cars, and similar vehicles used on any railroad which is a highway of interstate commerce."

And then holds said act so constructed within the powers of Congress. The decision in the case of Erie R. v. U. S. and line of reasoning can have no bearing on the decision of this question. The charge in the second count is for a failure to have the car properly equipped with a coupling as required by the act. It is no defense to this charge to say, "It is true the car was not properly equipped, but we are switching it and other cars on our line or in our yards." There is no denial that the defendant was a railroad engaged in interstate commerce and the cars mentioned engaged in interstate commerce, except it be by reason of the switching operations, and the Supreme Court in the case above referred to has construed the requirements of these acts in no uncertain terms.

The demurrer to the second plea to the second and third counts will therefore be sustained.

The demurrer having been considered, the motion to strike is not considered.