**WIGHT et al. v. CALLICUT.    (No. 2323.)**

(Court of Civil Appeals of Texas. Texarkana. Nov. 27, 1920. Rehearing Denied Dec. 2, 1920.)

**1. Commerce  27(7)—Shopman injured held within Safety Appliance Act.**

An interstate carrier's shopman, crushed between cars which he was chaining together, because of the absence of a drawhead, when a switch engine, coming onto the siding suddenly pushed the cars together, *held* to come within the Safety Appliance Act of Congress (U. S. Comp. St. §§ 8605–8612) as a matter of law.

**2. Master and servant  286(32)—Evidence held to justify peremptory charge on issue of negligence as to shopman between cars.**

In an action by a railroad shopman against the railroad for personal injuries received when a switch engine suddenly pushed cars which he was chaining together, evidence *held* to establish conclusively that the railroad was negligent, in that a switchman gave an unauthorized signal, so as to justify a peremptory instruction for the plaintiff on the issue of negligence.

Appeal from District Court, Harrison County; P. O. Beard, Judge.

Action by Haywood Callicut against Pearl Wight, receiver, and others. Judgment for plaintiff, and defendants appeal. Affirmed.

The appellee and a fellow workman were directed by their foreman to fasten two cars together with chains, so that the switch engine could switch the same. The drawhead of one of the cars, which was in a line of cars, was gone. While the appellee and a fellow workman were in between the two cars, chaining them together, the switch engine suddenly pushed the cars together, mashing appellee in his hips and back, and inflicting grievous injuries, for which he sues. The petition alleged (1) failure of the defendant, engaged in interstate commerce, to equip the car with couplers that would couple by impact, as required by the federal Safety Appliance Act (U. S. Comp. St. §§ 8605–8612); and (2) negligence of the defendant's employees in moving the switch engine against the car at the time. The defendant filed a general denial. The court, after hearing the evidence, peremptorily instructed the jury that the defendant was liable to the plaintiff

for the injury, and left to the jury for decision the question of amount of the damages only.

We find that the defendant was guilty of negligence proximately causing the injury in the act of the switchman Duncan causing the operatives of the switch engine to back the engine against the cars at the time, as pleaded and that the amount of damages as found by the jury was warranted by the proof. It was proved that the Texas & Pacific Railway extends from El Paso, Tex., via Marshall, to Shreveport and New Orleans, La., and that a great number of trains are operated over this road each day, engaged in interstate commerce between Louisiana and Texas. There were some 6 or more cars standing on the track at the reclamation plant of the railway at Marshall. One of the cars was a flat car loaded with iron rails, that had the drawhead pulled out of the east end. It is not shown whether this car had been loaded with ·rails in the yards at Marshall or had come in from the main line. Some of the cars at the reclamation plant had been unloaded, and ' especially a box car which was ready to go back into service on the main line. A switch engine headed west came in on the track east of the said string of cars. The switch engine had 4 cars in front of it. The switching crew consisted of the engineer, fireman, foreman of the crew, and two switchmen. The switch foreman saw that the car in question had no drawhead, and called upon the foreman of the reclamation plant to cause the car to be chained up to the next car, so that it and all the other cars could be transported to another track. It was not the duty of the switchman to chain the car. The foreman of the reclamation plant then directed the appellee and another workman to chain the car. The appellee and the other workman were not in the train service of the defendant, but were laborers in the shop. The foreman of the reclamation plant and the switch foreman were standing near the appellee when he was at work. Suddenly and without any warning the switch engine backed the cars against the car being chained, and mashed appellee to a serious extent. In explanation of this sudden movement of the switch engine the engineer testified as follows:

"I received a signal that came from Duncan. He follows the engine, and always stands close enough so that the engineer can get his signal, and he gets it from the man out of sight of the engineer. He passes it to him, and he then passes it to me. He gave me the signal to come ahead. Duncan was on the tip of the west end of the box car, which was the second car from the engine. When he gave me the signal, I obeyed it and started the engine west. * * * The signal was given by Duncan by the movement of his hand. There is no doubt in my mind whatever about it being a signal to go ahead. I didn't see the foreman at that time, or know where he was. The next signal I got was a violent signal from the foreman, Jones, to stop. As soon as I got that signal, I shoved the reverse lever and pulled the throttle wide open. I knew from the signal I got from Jones that something was wrong, and that he wanted me to go forward quick. * * * I don't think I had moved the engine over a foot or two feet when I got the signal [of Jones] to stop and back up."

The foreman, Jones, testified:

"I was there [where the appellee was chaining the cars] where my position as foreman caused me to be; there to see that they were ready before the cars moved. While standing there, and without any signal being given by me, the cars moved towards the others, and when I saw it coming I rushed east and gave a violent signal to the engineer. * * * It was really my business to give the signal to move the car; that is, primarily my business. In other words, no switchman should have given the signal to move them without first knowing that they were ready to move. * * * I didn't give any signal to move the train west. The engineer is really supposed to take signals from the engine foreman; but he does take signals passed to him by the brakeman. When I was head foreman, it was customary for me to take signals from other brakemen."

The switchman, Elia, testified:

"I was walking across the rails [on the car being chained] when the engine moved. Jones and Duncan were the other switchmen. Duncan was sitting on the west end of the head box car, and he was east of the separation of the cars, sitting there close to the engine. I only know through hearsay that any one took a signal from me. I really did not give any signal. I was walking on the top of the car to go to a car to let the brakes off. I didn't give any signal for the cars to be moved. My attention was first drawn to it by the holloing. Then I went there."

Duncan, the only other switchman, did not appear and testify in the case. The above is the only explanation in the record of the movement of the switch engine.

Prendergast & Prendergast, of Marshall, for appellants.

Jones, Sexton, Casey & Jones, of Marshall, for appellee.

LEVY, J. (after stating the facts as above). [1, 2] The peremptory instruction to the jury, which is complained of by the appellant, was given upon the two grounds: (1) That the defendant was engaged in interstate commerce as common carriers · over railroads, and that the car in question was being used under such circumstances as to bring it under the Safety Appliance Laws of the federal government; and (2) that the uncontroverted evidence showed that there was common-law negligence in the operation of the switch engine proximately causing the injury to appellee. The evidence in the record is without conflict. It is believed that the facts, as

a matter of law, bring the case within the Safety Appliance Act of Congress. Southern Ry. Co. v. U. S., 222 U. S. 20, 32 Sup. Ct. 2, 56 L. Ed. 72; L. & N. Ry. Co. v. Layton, 243 U. S. 617, 37 Sup. Ct. 456, 61 L. Ed. 931; T. & P. Ry. Co. v. Sprole, 202 S. W. 985. And the uncontroverted evidence shows, we think, that the defendant is liable for damages in consequence of the movement of the switch engine which caused the injury.

The facts clearly show that the switchman Duncan gave the signal to the engineer to move the engine, and that the giving of such a signal was not authorized by the foreman of the switch crew, or even the other switchman. The switchman Duncan was only authorized to pass signals that were given to him. If, therefore, the engine was moved by a premature and unauthorized signal through carelessness, the negligence in so doing would render the defendant liable. There is no evidence that the switchman Elia so used himself in walking on the car of rails as to reasonably cause Duncan to believe he was in fact signaling him to pass the signal to the engineer to move the cars. The switchman Elia positively denies giving any signal. The record establishes conclusively that Duncan gave an authorized signal to move the train, and that his act was, as a matter of law, negligent. The trial court did not err in so holding.

We think the assignment complaining of the excessive verdict should be overruled.

Affirmed.

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes