UNITED STATES v. PERE MARQUETTE R. CO.

(District Court, W. D. Michigan, S. D.   September 5, 1913.)

1. RAILROADS (§ 229*)—INTERSTATE COMMERCE—SAFETY APPLIANCE ACT.
    The use of a car, the coupling apparatus of which is inoperative on the tracks of a railroad company engaged in interstate commerce and in connection with such commerce either in a switch yard or in actual road service on the main line, is a violation of Safety Appliance Act March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), as amended by Act March 2, 1903, c. 976, 32 Stat. 943 (U. S. Comp. St. Supp. 1911, p. 1314).
    [Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. § 229.*]

2. RAILROADS (§ 229*)—INTERSTATE COMMERCE—SAFETY APPLIANCE ACT.
    Safety Appliance Act March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), as amended by Act March 2, 1903, c. 976, 32 Stat. 943 (U. S. Comp. St. Supp. 1911, p. 1314), imposes positive and absolute duties on carriers engaged in interstate commerce, the nonperformance of which is not excused by the exercise of due care and reasonable diligence.
    [Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. § 229.*]

3. COMMERCE (§ 27*)—INTERSTATE COMMERCE—SAFETY APPLIANCE ACT—CARS SUBJECT TO RESTRICTION.
    Safety Appliance Act March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), as amended by Act March 2, 1903, c. 976, 32 Stat. 943

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

(U. S. Comp. St. Supp. 1911, p. 1314), requires every railroad company engaged in interstate commerce to equip with safety appliances all its cars and trains, regardless of the service in which they are employed.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*]

4. COMMERCE (§ 27*)—SAFETY APPLIANCE ACT—EQUIPMENT OF CARS—TRAIN BRAKES—"TRAIN."

Safety Appliance Act March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), as amended by Act March 2, 1903, c. 976, 32 Stat. 943 (U. S. Comp. St. Supp. 1911, p. 1314), provides that it shall be unlawful for any common carrier engaged in interstate commerce by railroad to use any locomotive, in moving interstate traffic, not equipped with a power-driving wheel 'brake and appliances for operating the train brake system or to run any train in such traffic that has not a sufficient number of cars in it so equipped with power or train brakes that the engineer can control its speed without requiring brakemen to use the common hand brake for that purpose. The act of 1903 declares that the original act shall apply to all trains, locomotives, tenders, cars, and similar vehicles used on any railroad engaged in interstate commerce. *Held* that, where defendant railroad company engaged in interstate commerce transported 17 cars, at least one of which contained an interstate shipment, by switch engine over its main line tracks from one railroad yard to another, and the coupling apparatus of each of two of the cars was so out of repair as to be inoperative, and the air brakes were not coupled, so that they could be operated by the engineer, the cars and engine constituted a "train," within such act, and each of the cars so transported constituted a violation of the act.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*

For other definitions, see Words and Phrases, vol. 8, pp. 7056, 7057, 7818.]

Action by the United States against the Pere Marquette Railroad Company. Judgment for the United States.

E. J. Bowman, U. S. Dist. Atty., of Greenville, Mich.
Bills, Parker & Shields, of Detroit, Mich., for defendant.

SESSIONS, District Judge. This is a suit to recover penalties for alleged violations of the Safety Appliance Acts. The declaration contains three counts, each setting up a distinct and separate cause of action, but all based upon a single movement of a train from Wyoming Yard to Freight House Yard, in the city of Grand Rapids, on the 5th day of March, 1912. The first count charges the hauling in such train of an Erie car with the coupling apparatus on one end so out of repair as to be inoperative. The second count contains a like charge with reference to a Pere Marquette car in the same train. The third count charges that this train, consisting of 17 cars and a locomotive, was so hauled and moved when less than 85 per cent. of the cars therein had their brakes used and operated, or so assembled and connected that they could be used and operated, by the engineer of the locomotive.

Wyoming Yard and Freight House Yard are both within the general yard limits of the city of Grand Rapids, but they are about two miles apart, and each has its own system of switching tracks. Trains passing from one yard to the other must run for the entire distance, upon defendant's main line, over which its regular passenger and

freight trains as well as switching and transfer trains are operated. This part of the main line has some minor grades and curves and crosses at grade five city streets and a street car line.

All of defendant's freight trains entering Grand Rapids are taken directly to Wyoming Yard and are there broken up and the cars switched and classified; some being put into outgoing trains and forwarded to their destination, while others, containing local merchandise, are switched or transferred to the Freight House Yard or to some city side track to be unloaded and to have their cargoes rearranged. All outgoing freight trains are made up at and started from Wyoming Yard. Defendant's repair shops are located at this yard, which is also a flag station on the main line.

On March 5, 1912, 16 or 17 cars which had been brought into the Wyoming Yard in other trains were switched and formed into a train and then pushed by a switch engine from that yard over the main line of tracks to Freight House Yard to be unloaded or to have their cargoes rearranged. At least one of the cars contained an interstate shipment. Both before and at the time of the movement the couplings upon the two cars described in the declaration were so defective as to be inoperative. The air brakes of the cars of this train were not coupled up and connected so that they could be operated from the engine.

The sole question to be determined is whether or not the provisions of the Safety Appliance Acts apply to car and train movements like the one above described. It must be conceded that 16 cars and a locomotive coupled and moved together for two miles upon the main tracks of a railroad line through a large city and across several streets constitute a train within the purview of the statute. Plaintiff's witnesses have called the movement of this train a "transfer" movement, while defendant's witnesses insist that it was purely a "switching" movement. The name given to the movement is of no importance, and its character may not be controlling.

[1-3] That the use of a car, whose coupling apparatus is inoperative, upon the tracks of a railroad company engaged in interstate commerce and in connection with such commerce, either in a switch yard or in actual road service upon the main line, is a violation of the Safety Appliance Acts is no longer an open question. Delk v. St. Louis & San Francisco R. R. Co., 220 U. S. 580, 31 Sup. Ct. 617, 55 L. Ed. 590. It is also settled that these statutes impose positive and absolute duties, the nonperformance of which is not excused by the exercise of reasonable diligence and due care (Chicago, Burlington & Quincy R. R. Co. v. United States, 220 U. S. 559, 31 Sup. Ct. 612, 55 L. Ed. 582; St. Louis, Iron Mountain & Southern Ry. Co. v. Taylor, Administratrix, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061; Delk v. St. Louis & San Francisco R. R. Co., 220 U. S. 580, 31 Sup. Ct. 617, 55 L. Ed. 590), and that, in accordance with their provisions, every railroad company engaged in interstate commerce must equip with safety appliances all of its cars and all of its trains, regardless of the service in which they are employed (Southern Ry. Co. v. United States, 222 U.

S. 20, 32 Sup. Ct. 2, 56 L. Ed. 72; Wabash R. R. Co. v. United States, 168 Fed. 1, 93 C. C. A. 393).

[4] Should the statutory requirement concerning the use, connection, and operation of train brakes be given a different construction or interpretation from that which has been applied by the courts to the provisions relating to car coupling apparatus? Clearly not. The two sections of the statute are identical in the form of language employed, in legislative intent, in remedial purpose, and in the mandatory obedience thereto which is required; the only difference being that in the one the unit is a train or combination of cars, and in the other a single car. If section 1 of the original Safety Appliance Act stood alone, there would be at least room for argument that its provisions were intended by Congress to apply solely to trains made up for road service. But this section does not stand alone. It must be construed in connection with the other sections of the same statute, and particularly in connection with, and with reference to, the modifying and explanatory act of March 2, 1903. In and by the latter act Congress has removed whatever doubt, uncertainty, or ambiguity existed in the former one, and has said plainly and unequivocally that the provisions and requirements of the earlier act "shall be held to apply to all trains, locomotives, tenders, cars and similar vehicles used on any railroad engaged in interstate commerce." The legislative intent so plainly expressed must be respected. The beneficial and remedial purposes of these statutes must not be defeated by strained construction and must not be made subordinate to either convenience or economy of railroad operation. On the 5th day of March, 1912, the Pere Marquette Railroad was engaged in interstate commerce; the 17 cars and switch engine here in controversy constituted a train; at least one car of that train contained an interstate shipment; the train was run and operated upon defendant's main line of tracks; the coupling apparatus upon each of two cars was so out of repair as to be inoperative; and the air brakes were not coupled up and connected so that they could be operated by the engineer from the locomotive. There is therefore no escape from the conclusion that the law was violated in the manner set forth in each of the counts of plaintiff's declaration.

Counsel for defendant rely upon the case of Erie R. Co. v. United States, 197 Fed. 287, 116 C. C. A. 649, decided by the Circuit Court of Appeals of the Third Circuit. That case differs from the present one in some material respects, but in the main it supports defendant's contention. I have the profoundest respect for that court and its decisions, and it is with much diffidence and hesitation that I feel compelled to reach a different conclusion. In the Erie Case, however, the court seems to have entirely overlooked, ignored, and disregarded the controlling effect of the modifying and explanatory act of 1903. After careful and patient study, I am also convinced that the decision in the Erie Case is in conflict with both the spirit and the letter of the utterances of the Supreme Court.

Judgment will be entered in favor of plaintiff and against defendant for the statutory penalty of $100 upon each of the counts of the declaration and for costs of suit to be taxed.