ATLANTIC COAST LINE RAILROAD COMPANY v. GEORGE C. MOORE.

181 So. 374.
186 So. 210.
Er Banc
Opinion Filed April 28, 1938.
Rehearing Denied June 7, 1938.
Extraordinary Petition for Rehearing Denied December 1, 1938

486

488

*W. E. Kay, Thomas B. Adams, R. A. Burford* and *Fred D. Bryant,* for Plaintiff in Error;

*Fielding & Duncan,* for Defendant in Error.

PER CURIAM.—Defendant in Error, a train switchman in the employ of the Plaintiff in Error, was injured August 2, 1935, as he was boarding a passengar car attached to a mixed train in the railroad yards at High Springs, Florida. He was on duty at the time and was one of the switching crew which was shifting cars and placing them on "what is known as the cab track." The switching crew was engaged at the time in breaking up the Perry mixed local, and had all the cars placed but two, one of which was the passenger car number 910 on which plaintiff was injured. He had thrown the switch and as the passenger car passed to be placed on the siding, with lantern in his right hand, he caught the grab iron or hand hold with his left hand to get on the platform. In attempting to pull himself up, the grab iron came loose at the top and in trying to catch with the

-other hand, he was thrown around and fell in a squatting position against the steel steps of the car striking the end of his spine resulting in serious injury.

He went to the hospital of the plaintiff in error provided for the employees where he was treated for some time and discharged. He was several times returned to the hospital for treatment but without effecting a cure. He incurred doctors', nurses', and drug bills in large amounts, has suffered severe and excruciating pains, has not been able to work since the accident, is nervous, does not sleep, suffers with extreme headaches, and has been pronounced permanently disabled.

He brought this action in January, 1936. A motion for compulsory amendment of the declaration was denied and the case was tried on the issue made by the plea of not guilty resulting in a verdict in favor of the plaintiff for $50,000, which was on motion for a new trial reduced by remittitur to $15,000. A final judgment was entered and the defendant sued out writ of error.

The first question urged charges error in the order of the trial court overruling defendant's motion for compulsory amendment of the declaration. The purpose of the motion was to require the plaintiff to aver or set out in his declaration whether he relied on State or Federal law for recovery.

In actions of this kind, recovery may be had on the basis of common law negligence, the State Hazardous Occupation Act, or the Federal Employee Liability Act, or two or more of these acts may be involved in the recovery. The Federal Acts can have no application unless the train on which plaintiff was injured was at that time engaged in interstate commerce. The declaration in this case has been examined and we fail to find anything to suggest that the

Federal Safety Appliance Act or other Federal act was relied on for recovery.

We approve the rule in this State that good pleading requires that ultimate facts only be alleged in the declaration but in cases of this kind, where both a federal and a State law are relied on, the declaration should contain allegations to put the defendant on notice of this fact. If the State Hazardous Occupation Act alone is relied on, the declaration is sufficient but the proof can reach nothing but the question of negligence and the defendant may rebut this.

The reason for this rule is apparent. If both State and Federal law are relied on, the defense and the proof will be materially different. If the Federal law is relied on, the question of interstate commerce becomes important, in fact to that extent is the gist of the action and the defendant is entitled to know this in order to prepare his defense. If the Federal Safety Appliance Act is relied on, the defense of contributory negligence and assumption of risk are not applicable. If the State law only is relied on, federal questions may be merely incidental, but in either event, the defendant is entitled to know what he has to meet.

It is quite true that the Federal Safety Appliance Act requires all cars and vehicles whether engaged in interstate or intrastate commerce, to be equipped with safety devices, but if engaged in intrastate commerce, the action arises under State law and the Federal Safety Appliance Act must be read as *in pari materia* with the State law if it in any way influences the decision. Moore v. Chesapeake & Ohio Railway Co. 291 U. S. 205, 54 Sup. Ct. 402, 78 L. Ed. 755.

If at the time of the injury, the train on which plaintiff was injured was engaged in interstate commerce and the injury was from failure to comply with the Federal Safety Appliance Act, the defense of contributory negligence and

assumption of risk are not available, they having been abolished by that act as to actions arising in interstate commerce, but such defenses not having been abolished in this State, they are available if the train at the time of the accident was engaged in intrastate commerce.

The Federal Safety Appliance Act does not give a right of action for damages when not observed. It requires that all instrumentalities used in interstate or intrastate commerce be equipped with safety devices, and if not done, and injury results therefrom, if the action arose in interstate commerce, it is only necessary to prove that the instrumentality was not so equipped. The declaration nowhere alleges that the defendant was a common carrier engaged in interstate commerce nor does it contain allegations that would lead one to infer that this was the case. If this fact is to be relied on for recovery, defendant was entitled to be so advised because both this measure of liability and its defense would be affected. St. Louis S. F. & T. R. Co. v. Seale, 229 U. S. 156, 33 Sup. Ct. 651, 57 L. Ed. 1129; Toledo & Co. v. Slavin, 236 U. S. 454, 35 Sup. Ct. 306, 59 L. Ed. 671; Garret v. L. & N. R. Co., 235 U. S. 308, 35 Sup. Ct. 32, 59 L. Ed. 242; Hogarty v. Philadelphia & Reading Ry. Co., 255 Pa. 236, 99 Atl. 741.

We have examined S. A. L. Ry. Co. v. Hess, 73 Fla. 494, 74 So. 500; C. H. & N. Ry. Co. v. Truette, 81 Fla. 152, 87 So. 427, text 431; Jacksonville Terminal Co. v. Alston, 112 Fla. 423, 152 So. 14; Kansas City & Western Ry. Co. v. McAdow, 240 U. S. 51, 36 Sup. Ct. 252, 60 L. Ed. 520, and other cases relied on by defendant in error but we think the facts involved clearly distinguish them from the case at bar.

The question of whether or not the defendant was engaged in interstate commerce at the time of the accident or with instrumentalities used in interstate commerce is one

of fact and is determined by the work he was actually doing at the time rather than the work he had previously done or expected to do in the immediate future. Illinois Central R. Co. v. Bahrens, 233 U. S. 473, 34 Sup. Ct. 646, 58 L. Ed. 1051; Erie R. Co. v. Welsh, 242 U. S. 303, 37 Sup. Ct. 116, 61 L. Ed. 319; Chicago, B. & Q. R. Co. v. Harrington, 241 U. S. 177, 36 Sup. Ct. 517, 60 L. Ed. 941; Pope v. Utah-Idaho Cent. R. Co., 54 Fed. (2nd) 575; Southern Ry. Co. v. U. S., 222 U. S. 20, 32 Sup. Ct. 2, 56, L. Ed. 72; St. Louis & C. R. Co. v. Seale, *supra.*

Some of these cases are very illuminative of the case at bar particularly the latter one. The burden of showing that the plaintiff was engaged in interstate commerce at the time of the accident is not proven by a mere showing that the train carried cars destined to different states. Neither is the fact that the train had been broken up and supper had intervened and only two cars were to be placed at the time of the accident conclusive proof that at the time of the accident the plaintiff was engaged in intrastate commerce. If the Perry mixed train carried cars destined to points outside the State and the plaintiff was injured while he was engaged as a switchman breaking it up and placing the cars in their proper place to go on their journey he was engaged in interstate commerce but there was nothing in the declaration warranting the introduction of evidence on these points.

There being nothing in the declaration to indicate that the plaintiff relied on the Federal statutes all evidence with reference to interstate commerce was irrelevant and should have been excluded. This being the case, it necessarily follows that the affirmative charge for a directed verdict for the plaintiff based on this evidence was error.

The contention that the grab iron in question was not within the requirements of the Federal Safety Appliance

Act is without merit. This contention appears based on the fact that it was attached in a perpendicular position to the side of the steps to the vestibule of the car. The underlying purpose of the act was to safeguard the life and welfare of the employees and so long as required for that purpose its position and location on the railroad's instrumentalities is not a matter of importance.

The concluding question essential to discuss is whether or not the alleged vice in the verdict rendered was such that it could be corrected by *remittitur*.

This court has repeatedly entered *remittiturs* to correct excessive verdicts but such procedure is warranted only in cases where there is a clear showing of misguided judgment in reaching the verdict or where the proper elements that control the making of the verdict are not shown to have been present. If it is shown that the verdict was induced by prejudice, passion, favoritism, or other factors that should not influence its making, it then becomes a nullity and there is no basis on which it can be corrected by the trial court. To preserve its integrity, the verdict must be that of the jury and not that of the Court.

The *ad damnum* clause in the declaration claimed $50,000 damages; the jury returned a verdict for that amount. The trial judge on motion for new trial reduced it to $15,000, less than one third of the amount allowed by the jury. This would seem to show conclusively that it was influenced by improper considerations, that it was shocking to the judicial conscience, that it was a nullity in the first instance, and as corrected was the verdict of the Court, and in no sense that of the jury.

It is accordingly reversed with directions to reform the pleadings and order a new trial unless the plaintiff elects to rely on State law.

Reversed with directions.

ELLIS, C. J., and WHITFIELD, TERRELL, BROWN, BUFORD and CHAPMAN, J. J., concur.

## ON REHEARING

BUFORD, J.—We granted a rehearing in this case because it appeared that the Court had been led into error by the contention that "the court erred in overruling objections to interrogatories propounded to District Superintendent Hansard, seeking to show that defendant was an interstate carrier, and that the train in which the car in question was last handled carried interstate commerce."

On considering these contentions we said:

"The Federal Acts can have no application unless the train on which plaintiff was injured was at that time engaged in interstate commerce. The declaration in this case has been examined and we fail to find anything to suggest that the Federal Safety Appliance Act or other Federal Act was relied on for recovery."

We overlooked and failed to consider the force and effect of Sections 12, 13, 14 and 16, Title 45 U. S. C. A., which are as follows:

"12. Safety Appliances, as designated by commission, to be standards of equipment, modification of standard height of drawbars.

"The number, dimensions, location, and manner of application of the appliances provided for by sections 4 and 11 of this chapter as designated by the Interstate Commerce Commission shall remain as the standards of equipment to be used on all cars subject to the provisions of this chapter, unless changed by an order of said Interstate Commerce Commission, to be made after full hearing and for good cause shown; and failure to comply with any such requirement of the Interstate Commerce Commission shall be sub-

ject to a like penalty as failure to comply with any requirement of this chapter. Said commission is hereby given authority, after hearing, to modify or change, and to prescribe the standard height of drawbars and to fix the time within which such modification or change shall become effective and obligatory, and prior to the time so fixed it shall be unlawful to use any car or vehicle in interstate or foreign traffic which does not comply with the standard now fixed or the standard so prescribed, and after the time so fixed it shall be unlawful to use any car or vehicle in interstate or foreign traffic which does not comply with the standard so prescribed by the commission. (Apr. 14, 1910, c. 160, No. 3, 36 Stat. 298.)"

"13. Penalty for using car not equipped as provided; hauling car for repairs where equipment becomes defective; liability for death or injury of employee; use of chains instead of drawbars.

"Any common carrier subject to this chapter using hauling or permitting to be used or hauled on its line, any car subject to the requirements of this chapter not equipped as provided in this chapter, shall be liable to a penalty of $100 for each and every such violation, to be recovered as provided in section 6 of this chapter; *Provided*, that where any car shall have been properly equipped, as provided in this chapter, and such equipment shall have become defective or insecure while such car was being used by such carrier upon its line of railroad, such car may be hauled from the place where such equipment was first discovered to be defective or insecure to the nearest available point where such car be repaired, without liability for the penalties imposed by this section or section 6 of this chapter, if such movement is necessary to make such repairs and such repairs cannot be made except at such repair point; and such movement or hauling of such car shall be at the sole risk of the

carrier, and nothing in this section shall be construed to relieve such carrier from liability in any remedial action for the death or injury of any railroad employee caused to such employee by .reason of or in connection with the movement or hauling of such car with equipment which is defective or insecure or which is not maintained in accordance with the requirements of this chapter; and nothing in this proviso shall be construed to permit the hauling of defective cais by means of chains instead of drawbars in revenue trains or in association with other cars that are commercially used, unless such defective cars contain livestock or 'perishable' freight. (Apr. 14, 1910, c. 160, No. 4, 36 Stat. 299.)" ,

"14, Liability for using car with defective equipment, except as specified. Except that, within the limits specified, in the preceding section of this chapter the movement of a car with defective or insecure equipment may be made without incurring the penalty provided by the statutes, but shall in all other respects be unlawful, nothing in sections 11, 12 and 13 of this chapter shall be held or construed to relieve any common carrier, the Interstate Commerce Commission or any United States attorney from any of the provisions, powers, duties, liabilities or requirements heretofore set out in this chapter; and, except as aforesaid, all .of such provisions, powers, duties, requirements and liabilities shall apply. (Apr. 14, 1910, c. 160 No. 5, 36 Stat. 299.)"

"16. Application of provisions to common carriers and vehicles subject to 'Safety Appliance Acts.' The provisions of sections 11, 12, 13, 14 and 15 as to the equipment of cars with the designated safety appliances apply to every common carrier and every vehicle subject to what are commonly known as the 'Safety Appliance Acts' set out in the first nine sections of this chapter. (Apr. 14, 1910, c. 160, No. 1, 36 Stat. 298.)"

Note 13 under Section 13, *supra,* says:

"Switching operations. The proviso was not intended to exclue switching operations' or the use of defective equipment while cars were being operated within the yard limits. U. S. v. Chespeake, etc. R. Co. (Va. 1914) 213 F. 748, 130 C. C. A. 262, wherein the court said: 'It is a matter of common knowledge that the danger incident to coupling cars is as great, if not greater, in switching yards than on the line between stations. The fact that the statute provides that 'such car may be hauled from the place where such equipment was first discovered to be defective or insecure to the nearest available point where such car can be repaired' clearly shows that it was the purpose of Congress not to permit unnecessary delay in making repairs of defective equipment by keeping such cars on side tracks and moving them from place to place unless it should be for the purpose of hauling them to the nearest available point for the purpose of making needed repairs. District Judge Sessions in the case of U. S. v. Pere Marquette R. Co. (D. C. Mich. 1913) 211 F. 220, in referring to the contention that in that case the movement of the train in question was what is known as a switching movement and that under this proviso did not apply, said: 'The name given to the movement is of no importance, and its character is not controlling. That the use of a car whose coupling apparatus is inoperative upon the tracks of a railroad company engaged in interstate commerce and in connection with such commerce, either in a switch yard, or in actual road service upon the main line, is a violation of the Safety Appliance Act (embodied in this chapter), is no longer an open question.' To hold that this proviso applies only to trains operated on lines between stations would in a large measure deny protection to those for whose benefit the law was

passed and give a narrow and artificial construction to the statute."

Note under Section 16, *supra,* says:

"Construction—Sections 1—16 of this chapter are mandatory and embrace cars used on an highway of interstate commerce whether then employed in such commerce or not, and includes employees injured through failure to comply with its terms, though engaged in duties not connected with interstate commerce. Ewing v. Coal & Coke Ry. Co. (1918) 96 S. E. 73, *certiorari* denied (1918) 38 S. Ct. 583, 247 U. S. 521, 62 L. Ed. 1246."

So we necessarily arrive at the conclusion that the allegations of the declaration were sufficient to state a cause of action, unless we hold that because of the failure to allege that the defendant was engaged in railroading "in interstate commerce" constituted a fatal defect. We do not so hold. See Jacksonville Terminal Co. v. Alston, 113 Fla. 423, 152 Sou. 14. In that case the declaration alleged:

"Comes now the plaintiff in the above entitled cause Edgar Alston, and pursuant to order of court made and entered herein, files this his amended declaration against the defendant, Jacksonville Terminal Company, a corporation, defendant, for this, to-wit:

"1. That at all times hereinafter mentioned the defendant was a corporation engaged in railroading in the State of Florida; that on or about the 21st day of February, 1931, at defendant's depot or station in the City of Jacksonville, Duval County, Florida, plaintiff was employed by defendant as, to-wit, mail porter, in its said business.

"That at said time and place, plaintiff acting in the course of his said employment, was engaged in loading a sack of mail upon an electric truck or tractor, commonly called a 'Butt Head,' which was then and there provided by de-

fendant for said purpose and which was then and there operated by another agent, servant or employee of defendant, who was then and there acting in the course of his said employment, which mail was then and there to be carried upon said truck or tractor to a railroad train in said depot or station and to be transported upon said train to a point or points beyond said city of Jacksonville; that said truck or tractor was backed up close to defendant's mail platform to permit the loading thereof as aforesaid; that after loading said mail upon said truck or tractor as aforesaid and for said purpose, plaintiff, in the performance of his said duties, got upon said truck and gave said operator thereof the signal to go ahead; that the operator of said truck, instead of operating said truck or tractor forward, carelessly and negligently propelled and ran the same backward and against and into said platform, and plaintiff was thereby painfully, seriously and permanently injured in and throughout his head, body and limbs and his leg was broken and crushed, by reason whereof plaintiff was suffered great pain and anguish, and plaintiff was thereby rendered incapable of performing his duties and services by him to be done and performed and will continue so to be permanently; to the damage of plaintiff in the sum of $25,000.00.

"Wherefore, plaintiff brings this suit and claims $25,000.00 damages of defendant."

The declaration was in two counts. There is no material difference between the first and second counts.

It is not necessary to plead the evidence of negligence in the declaration.

In Texas P. R. Co. v. Rigsby, 241 U. S. 33, 36 Sup. Ct. 482, 60 L. Ed. 874 it was held, (Page 483):

"It is earnestly insisted that Rigsby was not under the protection of the safety appliance acts because at the time he was injured he was not engaged in interstate commerce.

By No. 1 of the 1903 amendment its provisions and requirements and those of the act of 1893 were made to apply 'to all trains, locomotives, tenders, cars and similar vehicles used on any railroad engaged in interstate commerce—and to all other locomotives, tenders, cars and similar vehicles used in connection therewith,' subject to an exception not now pertinent. And by No. 5 of the 1910 amendment the provisions of the previous acts were made to apply to that act, with a qualification that does not affect the present case. In Southern R. Co. v. United States, 222 U. S. 20, 56 L. Ed. 72, 32 Sup. Ct. Rep. 2, 3, N. C. C. A. 822, which was an action to recover penalties for a violation of the acts with respect to cars some of which were moved in intrastate traffic, and not in connection with any car or cars used in interstate commerce, but upon a railroad which was a part of a through highway for interstate traffic, it was held that the 1903 amendment enlarged the scope of the original act so as to embrace all cars used on any railway that is a highway of interstate commerce, whether the particular cars are at the time employed in such commerce or not. The question whether the legislation as thus construed was within the power of Congress under the commerce clause was answered in the affirmative, the court saying: (Speaking only of railroads which are highways of both interstate and intrastate commerce, these things are of common knowledge; both classes of traffic are at times carried in the same car, and when this is not the case, the cars in which they are carried are frequently commingled in the same train and in the switching and other movements at terminals. Cars are seldom set apart for exclusive use in moving either class of traffic, but generally are used interchangeably in moving both; and the situation is much the same with trainmen, switchmen and like employees, for they usually, if not necessarily, have to do with both classes

of traffic. Besides, the several trains on the same railroad are not independent in point of movement and safety, but are interdependent, for whatever brings delay or disaster to one, or results in disabling one of its operatives, is calculated to impede the progress and imperil the safety of other trains. And so the absence of appropriate safety appliances from any part of any train is a menace not only to that train, but to others.' " * * *

"A disregard of the command of the statute is a wrongful act and where it results in damage to one of the class for whose especial benefit the statute was enacted, the right to recover the damages from the party in default is implied, according to a doctrine of the common law expressed in i Commyn's Dig. title 'Action upon Statute' (F) in these words: 'So in every case, where a statute enacts or prohibits a thing for the benefit of a person, he shall have a remedy upon the same statute for the thing enacted for his advantage, or for the recompense of a wrong done to him contrary to the said law. (Per Holt, Ch. J. Anonymous, 6 Mod. 26, 27.)"

In San Antonio & A. P. R. Co. v. Wagner, 241 U. S. 476, 36 Sup. Ct. 626, 60 L. Ed. 1110, it was held (Page 630):

" 'A disregard of the command of the statute (safety appliance act) is a wrongful act, and where it results in damage to one of the class for whose especial benefit the statute was enacted, the right to recover the damages from the party in default is implied.' If this act is violated, the question of negligence in the general sense of want of care is immaterial. 241 U. S. 43, and cases there cited. But the two statutes are in pari materia, and where the employers' liability act refers to 'any defect or insufficiency due to its negligence, in its cars, engines, appliances, etc., it clearly is the legislative intent to treat a violation of the

safety appliance act as 'negligence,'—what is sometimes called negligence *pcr se.*"

. We find nothing contrary to these holdings.

In the case of Jacksonville Terminal Co. v. Alston, *supra,* we cited as authority for our holding the case of McIntosh v. St. Louis & F. R. Co., 182 Mo. App. 288, 168 S. W. 821, in which case the sufficiency of petition or declaration was challenged and in .which, as to that, the court said:

"The principal error assigned here arises on the court's overruling defendant's objection, timely made, to the introduction of any evidence under the petition for the reason that: 'At the time of the alleged injury to the plaintiff he was engaged in .working on an interstate railroad, and therefore was engaged in interstate commerce, and his cause of action, if any, arises under the act of Congress known as the "Employers' Liability Act" and not under the statute of Missouri, and the petition fails to state facts sufficient to constitute a cause of .action under said Act of Congress known as the "Employers' Liability Act." '

"At the close of the evidence the defendant interposed a demurrer to same: 'That under the pleadings and evidence the plaintiff is not entitled to recover and your verdict must be for the defendant.'

"Defendant's position, as we understand it, is that the petition here is essentially bottomed on our state statute making railroads and similar carriers liable for injury to their employees arising from the negligent acts of a co-employee, and that, as defendant's evidence afterward showed, this defendant was at the time of the injury engaged in interstate commerce, plaintiff's cause of action, if any, must be bottomed on the Act of Congress of April 22, 1908, known as the Federal Employers' Liability Act (35 Stat. 65, c. 149 (U. S. Comp. St. Supp. 1911 p. 1322), and that, being tested by the latter act, the petition is not suf-

ficient. The essential allegations of the petition, the sufficiency of which is thus challenged, are these: That defendant is a corporation under the laws of this State; that at all the times mentioned the defendant was operating a railroad from Cape Girardeau and other points in this State to St. Louis and other points in that state, passing through the town of St. Marys and through Pemiscot Company in this State; that plaintiff and other employees were at the time of his injury engaged in repairing one of defendant's bridges at or near St. Marys and thereby 'were engaged in operating defendant's railroad'; that while so engaged the plaintiff was injured by the negligence of a co-employee while they were unloading some bridge timbers, setting out the manner and particulars of receiving his injury and the acts of negligence of the co-employee causing the same; that thereby plaintiff suffered great mental and physical pain and his ability to do work and his earning capacity have been greatly and permanently impaired; that by reason of the premises he is damaged and therefore asks judgment. It will be readily noticed that there is no specific statute referred to, either state or federal, as the basis of the action, but the pleader, as directed to do under our Code, states the facts which he says under the 'law of the land' entitles him to a judgment for the injuries received at the hands of a court having jurisdiction to grant such relief. It will not be doubted that the Act of Congress in question is part of the law of the land and is equally so with any state statutes. Defendant's criticism of the petition is that it does not state either the fact itself, or facts which show that defendant was at the time engaged in interstate commerce; but, that, by alleging that defendant operated its railroad between points in this state and that plaintiff's employment and injuries were in this state, such facts imply that defendant was engaged only in intra-state

commerce. But this would not follow by any means, since it is common knowledge that, under the large meaning of interstate commerce given by the courts, every railroad, however short its own line, engaged in interstate commerce in handling freight or passengers destined to a point in another state, whether such point of destination is reached by its own line or through a connecting carrier. All railroads in this state are, in front, required to engage in interstate commerce. State v. Railroad 212 Mo. 658, 677, 111 S. W. 500. As there held, it is not necessary to specifically allege that a railroad is engaged in interstate commerce in order that the Court take knowledge that an Act of Congress regulating interstate commerce is applicable thereto. Yet the lack of such allegation is the only defect suggested in this petition."

The judgment was affirmed in that case.

In the case of C. H. & N. Ry. Colvs. Truett, 81 Fla. 152, 87 Sou. 427, Mr. Justice ELLIS, speaking for the Court, said:

"Several instructions requested by the defendant and refused, which refusals to so instruct the jury, from the bases of the twenty-first, twenty-second and twenty-third assignments of error, dealt with the matter of the deceased at the time of the injury being engaged in interstate commerce. There was ample evidence tending to show such to have been the case. If the facts in the case, whether pleaded or not, showed that the deceased was at the time of the injury engaged in interstate commerce, then the Federal law regulating the plaintiff's rights was paramount, and excludes all conflicting State regulations. See Flanders v. Georgia Southern & F. R. Co., 68 Fla. 470, 67 South. Rep. 68; Seaboard Air Line Ry. v. Hess 73 Fla. 494, 74 South. Rep. 500. The court erred in refusing the instructions requested, Counsel for defendant in error contend

that whether the deceased was engaged in interstate com-
merce was a question of law, and that as the deceased was
not working on a telephone line when the injury occurred,
but was being carried to Boca Grande for the purpose of
repairing telephones there, the court held that he was not
engaged in interstate commerce and properly refused the
instructions. Counsel contend that the Federal Act applies
only in cases where the injured person is at the moment of
injury engaged in working upon some instrumentality of
interstate commerce.

The plaintiff stated her case in the declaration upon the
theory that the deceased at the time of the accident was on
duty as a telephone lineman in the employment of the de-
fendant and was being carried by defendant to Boca
Grande where certain work was to have been performed by
him. There was evidence tending to show that the defend-
ant was engaged in interstate commerce and used the tele-
phone lines in connection with its business, both inter and
intra state. It was testified by one witness that the tele-
phone lines were used in 'dispatching trains and ' for the
general conduct of the road in every way.' That the tele-
phone was for the purpose of 'dispatching trains and di-
recting these trains in all respects in regard to handling
shipments from the road to points outside the State.' Now
was the work upon which the deceased was engaged when
he was injured independent of the interstate commerce in
which the defendant was engaged, or was it so closely con-
nected as to be part of it. If it was, then the Federal Act
applies. See Pederson v. Delaware, L. & W. R. Co., 229
U. S. 146, 33 Sup. Ct. Rep. 648. While the deceased was
not actually repairing a telephone at the time of the injury,
he was on duty, as the declaration alleges, in the act of
going to his work, and was therefore engaged in interstate
commerce. See Grand Trunk Ry. Co. of Canada v. Knapp,

233 Fed. Rep. 950; San Pedre, L. A. & S. L. R. Co. v. Davide, 210 Fed. Rep. 870."

In Vandalia R. Co. v. Stringer, 182 Ind. 676, 106 N. E. 865, 107 N. E. 673, it was held:

"In an action for injuries to an employee it is not necessary to point out the specific statute, state or federal, under which the action is brought, but it is enough to allege the facts and recovery may be had under that statute, made applicable by the evidence."

The confusion has arisen by failure to distinguish between the requirements in cases where one claims the benefits of a legislative Act like the employers' liability Acts and the requirements where the negligence relied on is the nonperformance of an Act required by statute to be performed for the safety of the plaintiff and others like situated. There is in the latter class of cases no more reason to point out and plead the statute which makes the omission negligence *per se* than there is to plead the specific acts of negligence relied upon where no such statute is involved.

For the reasons stated, the statements and enunciations touching the matters of law herein discussed in our opinion filed in this cause April 28, 1938, and which are contrary to the views herein expressed, are now overruled and recalled.

We adhere, however, to what we said in that opinion, as follows:

"This court has repeatedly entered *remittiturs* to correct excessive verdicts but such procedure is warranted only in cases where there is a clear showing of misguided judgment in reaching the verdict, or where the proper elements that control the making of the verdict are not shown to have been present. If it is shown that the verdict was induced by prejudice, passion, favoritism or other facts that should not influence its making, it then becomes a nullity and there is no basis on which it can be corrected by the trial

court. To preserve its integrity, the verdict must be that of the jury and not that of the court.

"The *ad damnum* clause in the declaration claimed $50,-000 damages; the jury returned a verdict for that amount. The trial judge on motion for new trial reduced it to $15,-000, less than one third of the amount allowed by the jury. This would seem to show conclusively that it was influenced by improper considerations, that it was shocking to the judicial conscience, that it was a nullity in the first instance, and as corrected was the verdict of the court, and in no sense that of the jury."

We are not unmindful of the contention which is made by the defendant in error that the appellate court may not reverse a judgment and order a new trial because of excessiveness of the verdict in cases where a verdict for the plaintiff is directed by the court because the court only pursues such course in cases "where there is a clear showing of misguided judgment in rendering the verdict or where the proper elements that control the making of the verdict are not shown to have been present."

The contention is not tenable.

The element as to which "misguided judgment in reaching the verdict" is evidenced by the excessivness of the verdict and not by the fact that the verdict is returned in favor of one party or the other. The taint in such verdicts is found in the excessive element thereof and not elsewhere.

The conduct of the court in directing the verdict for the plaintiff is not at all responsible for the excessiveness of the verdict. The amount of the verdict is the element left entirely for the jury to determine and the vice of the excessiveness may adhere in a directed verdict as well as in one not directed.

Therefore, the judgment shall stand reversed and a new trial shall be had on the question of damages only.

So ordered.

WHITFIELD, BROWN and CHAPMAN, J. J., concur.

ELLIS, C. J., and TERRELL, J., adhere to the judgment entered in this cause on April 28, 1938.

ON EXTRAORDINARY PETITION FOR REHEARING.

PER CURIAM.—After oral argument we have permitted attorneys for Plaintiff in Error to file an extraordinary petition for rehearing, which we have considered.

It appears to us that the Plaintiff in Error has not clearly differentiated the status of one suing claiming the benefits under the Federal Employers' Liability Act and one maintaining a suit not under the Federal Employers' Liability Act, but to recover damages for injury sustained by reason of the defendant railroad not complying with the Federal Safety Appliance Act.

The Federal Employers' Liability Act creates liability and one seeking to recover under the provisions of that Act must show by allegations in his declaration that he comes within the purview of the Act. The Federal Safety Appliance Act fixes a standard of safety appliances and provides that failure to comply with that standard by railroads engaged in interstate commerce shall constitute negligence.

In the opinion filed herein on October 21, 1938, we held that it was not necessary for the Plaintiff to allege that the negligence complained of was in the failure of the railroad company to comply with the Federal Safety Appliance Act. We held that the allegations of the declaration were sufficient to warrant recovery by the Plaintiff; that he was only required to plead ultimate facts.

It is not necessary for us to repeat here what was said in that opinion.

If what we said there requires any further authority to sustain it, we refer to the case of Moore v. Chesapeake &

Ohio Ry. Co., 78 Law Ed. 755, 291 U. S. 205, wherein the Supreme Court of the United States, speaking through Mr. Chief Justice HUGHES, said:

"The Safety Appliance Acts having prescribed the duty in this fashion, the right to recover damages sustained by the injured employee through the breach of duty sprang from the principle of the common law (Texas & P. R. Co. v. Rigsby, *supra*, 241 U. S. 39, 40, 60, L. Ed. 877, 878, 36 S. Ct. 482) and was left to be enforced accordingly, or, in case of the death of the injured employee, according to the applicable statute. St. Louis I. M. & S. R. Co. v. Taylor, *supra*, (210 U. S. 285, 52 L. Td. 1064, 28 S. Ct. 616); Minneapolis, St. P. & S. Ste. M. R. Co. v. Popplar, 237 U. S. 369, 59 L. Ed. 1000, 35 S. Ct. 609, *supra*. When the Federal Employers' Liability Act was enacted, it drew to itself the right of action for injuries or death of the employees within its purview who were engaged in interstate commerce, including those cases in which injuries were due to a violation of the Safety Appliance Acts. Such an action must be brought as prescribed in the Federal Employers' Liability Act and if brought in the state court it cannot be removed to the Federal Court, although violation of the Safety Appliance Act is involved. See St. Joseph & G. I. R. Co. v. Moore, 243 U. S. 311, 61 L. Ed. 741, 37 S. Ct. 278. With respect to injuries sustained in intrastate commerce nothing in the Safety Appliance Acts precluded the State from incorporating in its legislation applicable to local transportation the paramount duty which the Safety Appliance Acts impose as to the equipment of cars used on interstate railroads. As this Court said in Minneapolis St. P. & S. Ste. M. R. Co. v. Popplar, *supra*, as to an action for injuries sustained in intrastate commerce; 'The action fell within the familiar category of cases involving the duty of a master to his servant. This duty is defined by the

common law, except as it may be modified by legislation. The Federal statute in the present case touched the duty of the master at a single point and, save as provided in the statute, the right of the plaintiff to recover was left to be determined by the law of the State.' "

In Minneapolis St. P. & St. Ste. Marie Ry. Co. v. Popplar, 237 U. S. 369, 59 Law Ed. 1000, 35 S. Ct. 609, it was held:

"The question whether the right to recover for the negligent killing of a railway brakeman, based upon the company's non-compliance with the safety appliance Acts of March 2, 1893, (27 Stat. at L. 531, chap. 196, Comp. Stat. 1913, No. 8605) and March 2, 1903 (32 Stat. at L. 943, chap. 976, Comp. Stat. 1913, No. 8613), was barred as a matter of law because the brakeman, after unsuccessfully trying to work an automatic coupler, had attempted to effect the uncoupling by hand, contrary to a rule of the railway company, forbidding him to step between moving cars. is not Federal in character but is a question outside the Federal Statutes, which cannot be considered by the Federal Supreme Court on a writ of error sued out under the Judicial Code, No. 237, to a state court."

And in the body of the opinion in that case it was said, in addition to what was quoted in the opinion by Mr. Chief Justice HUGHES above referred to:

"It cannot be said, from any point of view, that any right or immunity granted by the act was denied to the plaintiff in error."

The same may be said of the instant case.

The declaration alleged that the defendant was engaged in the business of railroading. It would have been surplusage to add to the allegation "in interstate commerce" because it is now well settled as a matter of law that all cor-

porations engaged in the business of railroading are engaged in interstate commerce. It was alleged that the accident occurred in the switching yard at a certain station on the railroad and it was unnecessary to add the allegation that the tracks in the switching yard constituted a part of the line of railroad engaged in interstate commerce because it is settled as a matter of law that such switching yards, side-tracks, Ys, etc., constitute a part of the highway used in interstate commerce. See U. S. v. Chesapeake, etc., R. R. Co., 213 Fed. 748. Nothing is shown to the contrary. 130 C. C. A. 262; U. S. v. Pere Marquett R. Co., 211 Fed. 220.

The judgment entered October 21, 1938, will be modified and amended to read as follows:

"Therefore, the judgment shall stand reversed and a new trial shall be had on the question of damages only which shall include the issue as to the causal connection between the alleged negligence, that is between the defec-tive condition of the safety appliance, and the alleged in-jury; the extent of the injury, if any, and the damages, if any, sustained by the plaintiff by reason of, or proximately resulting from, the alleged injury."

Our opinion and judgment above referred to; so modified and amended is adhered to and the extraordinary petition for rehearing is denied.

So ordered.

WHITFIELD, BROWN, BUFORD and CHAPMAN, J. J., con-cur.

TERRELL, C. J., adheres to the original opinion.

THOMAS, J., not participating.